UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| SAMI-SYSTEMATIC ANALYSIS MANAGEMENT INC.,<br><br>Plaintiff,<br><br>v.<br><br>OMNIVERE ACQUISITIONS, LLC, DRIVEN, INC., and OLD OMV CO., LLC<br><br>Defendants. | Case No. _____ |

## COMPLAINT

Plaintiff SAMi-Systematic Analysis Management Inc. ("SAMi" or "Plaintiff") submits this Complaint against Defendants Omnivere Acquisitions, LLC ("Omnivere Acquisitions"), Driven, Inc. ("Driven"), and Old OMV Co., LLC ("Old Omnivere").

## THE PARTIES

1. Plaintiff SAMi is a Maryland corporation, with its principal place of business at 1802 Tuscarora Court, Frederick, Maryland 21702. SAMi provides technology consulting services to clients including the Defendants.

2. Defendant Omnivere Acquisitions is a Delaware corporation that was formed on or around November 30, 2018, and which has a registered office at 251 Little Falls Drive, Wilmington, DE 19808. Omnivere Acquisitions is wholly owned by Defendant Driven.

3. Defendant Driven is a Virginia corporation, with its principal place of business at 6400 Arlington Blvd., Suite 750, Falls Church, Virginia 22042. Driven provides e-discovery and data management services to attorneys, law firms, and corporate counsel.

1

4. Defendant Old Omnivere is a Delaware corporation. Old Omnivere operated as Omnivere, LLC until December 2018, when essentially all of Omnivere, LLC's assets were acquired by the Driven-owned entity Omnivere Acquisitions.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to SAMi's claims occurred in Maryland. Venue is also proper in this District pursuant to the Master Services Agreement ("MSA") that forms the basis for SAMi's breach of contract claim, in part because the MSA states that "any party may seek preliminary or permanent injunctive relief … arising out of or related to this Agreement from any court of competent jurisdiction." *See* Exhibit A (MSA) at ¶ 11.11.

## FACTS RELEVANT TO ALL COUNTS

7. Plaintiff SAMi is a small IT consulting company founded in 2010. SAMi has a single office located in Frederick, Maryland.

8. In 2015, Omnivere, LLC asked SAMi to provide services necessary for maintaining a legacy version of the online Maryland Health Insurance Exchange system. Those services were needed to ensure that the legacy Maryland Health Insurance Exchange system would remain available to Omnivere, LLC's clients, Saul Ewing Arnstein & Lehr LLP ("Saul Ewing") and the State of Maryland, which required access to the system in connection with litigation in Maryland.

9. On July 20, 2015, SAMi and Omnivere, LLC entered into a Master Services Agreement ("MSA") pursuant to which SAMi would provide consulting services related to monitoring and preserving the Maryland Health Insurance Exchange system. *See* Exhibit A (Master Services Agreement and associated Statements of Work). Details regarding the scope of the services provided by SAMi and the compensation to be paid to SAMi are set forth in Statements of Work ("SOWs") issued under the terms of the broader Master Services Agreement. Collectively, the MSA and the respective SOWs constitute the parties' agreement ("the Agreement"). *See* Exhibit A at ¶ 1.1.

10. Pursuant to the Agreement, SAMi and its consultants were required to abide by "the rules and directives issued by the State of Maryland, and its representative, including Omnivere and Saul Ewing." Exhibit A at p. 15.

11. In order to accomplish SAMi's obligations under the Agreement, SAMi hired consultants, including a system architect and multiple system administrators, who performed work for the Defendants.

12. Over the following years, SAMi provided critical services pursuant to the Agreement in order to monitor and preserve the legacy Maryland Health Insurance Exchange system. SAMi issued monthly invoices to the Defendants for that work, and received payment for its invoices until May 2018.

13. SAMi continued providing services to the Defendants from June 2018 through February 2019, and the Defendants accepted those services, but SAMi has not received any payment for the work it has performed from June 2018 onwards.

14. More specifically, SAMi has not received payment for the following nine invoices: June 2018 invoice in the amount of $33,750, July 2018 invoice in the amount of

$26,000, August 2018 invoice in the amount of $27,000, September 2018 invoice in the amount of $32,750, October 2018 invoice in the amount of $26,000, November 2018 invoice in the amount of $25,000, December 2018 invoice in the amount of $32,750, January 2019 invoice in the amount of $25,000, and February 2019 invoice in the amount of $32,750. The total amount of the unpaid invoices is $261,000. Despite multiple requests, these invoices remain unpaid.

15. In December 2018, essentially all of Omnivere, LLC's assets were acquired by Driven's wholly-owned subsidiary, Omnivere Acquisitions. The "new" Driven-owned Omnivere continued Omnivere's operations, while the remaining shell of "Old Omnivere" ceased operating. *See* Exhibit B (Driven press release explaining "The newly-combined company offers law firms and corporate counsel one provider for software, services, consulting, and staffing across the entire data lifecycle); Exhibit C (Driven website stating "Omnivere A Driven Company").

16. Driven continued the business operations of Omnivere, LLC and many Omnivere, LLC employees became employees of the newly combined Driven/Omnivere. *See* Exhibit D (Feb. 5, 2019 email from previous Omnivere, LLC employee with signature line listing www.driven-inc.com as website while continuing to use an omnivere.com email address). As the companies merged their operations, Omnivere, LLC's website—www.omnivere.com— began automatically redirecting to the Driven website, www.driven-inc.com.

17. In early 2019, "Omnivere A Driven Company" continued to work with SAMi, and both Driven and Driven-owned Omnivere continued to request services from SAMi to support Saul Ewing and the State of Maryland.

18. Plaintiff SAMi was not informed of any change to its obligations under the Agreement as a result of the merger between Driven and Omnivere, and SAMi continued to

abide by its obligations under the Agreement, providing monitoring and preservation services for the legacy Maryland Health Insurance Exchange system to Driven/Omnivere's clients, Saul Ewing and the State of Maryland, who relied on Plaintiff SAMi for those services as they had since 2015. Driven/Omnivere employees also continued to manage Plaintiff's consultants in the same manner that Omnivere, LLC employees managed Plaintiff's consultants prior to the acquisition.

19.     Driven knowingly accepted services from Plaintiff SAMi after Driven acquired Omnivere. The newly-combined entity gave Plaintiff no reason to believe that it would cease to abide by the Agreement, and refuse to pay SAMi for the services that it continued to request and accept from SAMi.

20.     On February 12, 2019, after SAMi continued to remain unpaid despite submitting multiple invoices to the Defendants, SAMi wrote to Driven management reminding them that payments needed to be made, otherwise SAMi would lose its consultants.

21.     On February 22, 2019, after still not receiving any payment for the work SAMi performed from June 2018 onward, SAMi wrote to Driven management again, and notified the litigation support project manager at Saul Ewing that SAMi could no longer continue providing services without receiving payment for its unpaid invoices.

22.     In response, the litigation support director at Saul Ewing thanked SAMi for all of its work to date, and said "[t]he Driven acquisition has been difficult for all of us and we certainly want any money owed to SAMi to be paid in full." *See* Exhibit E (Feb. 22, 2019 email from Saul Ewing) at 1-2. Saul Ewing further asked SAMi to "continue to work with Omnivere/Driven to get this resolved" and asked for one additional week "to work this out." *Id*. at 2. Saul Ewing's litigation support director further stated "[p]lease convey this to Driven and

work with [Driven CEO] Brian [Cunningham] and Nabeel [SAMi's owner] to get this resolved … quickly." *Id.* at 1.

23. SAMi agreed to continue providing services for an additional week as requested, but Omnivere/Driven still did not pay SAMi for its work.

24. On March 4, 2019, SAMi reiterated that it could not continue to provide services without receiving payment for those services as required by the Agreement. That same day, Driven management reached out directly to one of SAMI's consultants with an offer of employment, asking the consultant to continue working on the Maryland Health Insurance Exchange system directly for Driven, so that Driven could continue to provide services to Saul Ewing and the State of Maryland without paying SAMi. Senior members of Driven management, including Driven CEO Oswaldo Jimenez and Driven CFO Brian Cunningham, were copied to the email. Exhibit F (March 4, 2019 email from Driven to SAMi consultant).

25. In that email, Driven noted that the consultant had spent the past eight months working on the Maryland Health Exchange project as a SAMi consultant, and requested that the consultant let Driven know of "all physical equipment and human resources" that were currently provided by SAMi. *Id*. at 1.

26. Driven's Chief Financial Officer then contacted SAMi's founder and pressured him to cease seeking payment for SAMi, saying SAMi's consultants would suffer unless Driven acquiesced and allowed Driven to take over SAMi's work, and hire away SAMi's consultants, without paying SAMi for the work it had already performed.

27. Driven took these actions in an effort to unfairly usurp SAMi's business and hire away its key consultants—in violation of the Agreement—as part of an effort to strong arm SAMi into abandoning its requests for payment, and to harm SAMi's business, and its

longstanding relationship with Saul Ewing and the State of Maryland, so that Driven could provide services to Saul Ewing and the State of Maryland instead using SAMi's consultants.

## COUNT I
## BREACH OF CONTRACT

28. Plaintiff SAMi realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 27 above.

29. Plaintiff and Omnivere, LLC entered into an Agreement under which Plaintiff provided technology consulting services—specifically, monitoring and preservation services for the legacy Maryland Health Insurance Exchange system—in exchange for payment.

30. Plaintiff issued invoices to Omnivere, LLC, and later to the merged Omnivere/Driven, on a monthly basis. Pursuant to the Agreement, payment was to be received by the Plaintiff within sixty days of the receipt of each invoice.

31. The Defendants breached the Agreement by failing to pay Plaintiff for work performed between June 2018 and March 2019, despite receiving regular invoices from the Plaintiff.

32. Omnivere/Driven also breached the agreement by soliciting SAMi's contractors in early 2019 and asking them to work directly for Omnivere/Driven, in violation of the non-solicitation obligations set forth in the Agreement. *See* Exhibit A at ¶ 9.2 ("[N]either party shall, directly or indirectly, solicit for employment or employ, whether as an employee or independent contractor, any employee, officer or independent contractor of the other party who performed any work in connection with or related to the Services under the applicable SOW.")

33. Driven and Omnivere Acquisitions are bound by the Agreement as successors to Omnivere, LLC, because Driven, through Omnivere Acquisitions, acquired substantially all of

the assets of Omnivere, LLC, and continued Omnivere's operations through what Driven described as a merger between Driven and Omnivere, LLC. Driven and Omnivere Acquisitions also assumed the Agreement by continuing to request and accept services rendered by SAMi pursuant to the Agreement after acquiring Omnivere, LLC's assets.

34. As a result of the Defendants' breach of contract, Plaintiff suffered damages in the amount of $261,000 based on unpaid invoices alone, and Plaintiff is entitled to recover those damages plus attorneys' fees, costs, and interest, and other damage proximately caused by the Defendants' breach of contract. *See* Exhibit A at ¶ 11.17 ("In the event of litigation or arbitration relating to the subject matter of this Agreement, the prevailing party shall have the right to collect from the other party its reasonable costs and necessary disbursements and attorneys' fees incurred in enforcing this Agreement.")

## COUNT II
## UNJUST ENRICHMENT

35. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 34 above.

36. After acquiring Omnivere, LLC's assets, Driven specifically asked Plaintiff to perform work on its behalf, and relied on Plaintiff's services to fulfil its obligations to clients Saul Ewing and the State of Maryland.

37. Driven was aware of the benefits being conferred upon them by Plaintiff and received invoices documenting the monetary value of those benefits, but refused to pay SAMi for the work it performed.

38. Driven continues to unjustly retain the benefits of Plaintiff SAMi's work while refusing to pay SAMi for that work.

39.     As a result, Plaintiff SAMi suffered damages in the amount of at least $261,000, which is the total amount of its unpaid invoices, plus interest.

## COUNT III
## COMMON LAW UNFAIR COMPETITION

40.     Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 39 above.

41.     Driven has damaged and jeopardized SAMi's business by using deceit, trickery and other unjust and unfair tactics.

42.     Among other conduct, Driven deceived SAMi into providing IT consulting services for months by continuing to accept those services, and by requesting the outstanding invoices for SAMi's services, despite having no intention to fully pay for those services.

43.     After SAMi continued to request payment, and stated it would have to discontinue providing support for the legacy Maryland Health Exchange System if it did not receive payment for its prior work, Driven demanded that SAMi cut the contractually agreed upon rates for its services over 50%.

44.     When SAMi refused Driven's demands, Driven punished SAMi by, among other conduct, attempting to cut SAMi out of the loop by approaching one of SAMi's consultants with an offer of employment, and accusing SAMi's founder of standing in the way of the consultant's ability to earn a livelihood.

45.     Driven also attempted to harm SAMi's longstanding relationship with Saul Ewing and the State of Maryland by threatening to sue SAMi for defamation and tortious interference with contract when SAMi reasonably contacted the litigation support manager at Saul Ewing to notify them that SAMi would not be able to continue providing services because

it had not received payment for the work it had performed since June 2018.

46. Through these actions, and others like them, Driven engaged in deliberate wrongdoing with wrongful motives and ill will specifically directed at SAMi.

47. Driven's unjust and unfair actions damaged SAMi's business by tricking SAMi into providing services that Driven never intended to fully pay for, and by damaging SAMi's ability to continue supporting the legacy Maryland Health Insurance Exchange system.

## COUNT IV
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

48. Plaintiff SAMi realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 47 above.

49. Plaintiff had a business relationship with its consultants who worked on the Maryland Health Insurance Exchange system monitoring and preservation project.

50. Plaintiff also had business relationships with the State of Maryland, which it had previously done work for, and with Saul Ewing.

51. Driven was aware of Plaintiff's relationships with its consultants. Driven was also aware of Plaintiff's relationships with the State of Maryland and with Saul Ewing, as Plaintiff has been performing services for the benefit of Saul Ewing and the State of Maryland for years.

52. Driven intentionally interfered with Plaintiff's business relationships with its consultants by reaching out to them with offers to work directly as Driven contractors instead of consultants for Plaintiff for the same Maryland Health Insurance Exchange project.

53. Driven also intentionally interfered with Plaintiff's business relationships with Saul Ewing and the State of Maryland by, among other things, baselessly sending a cease and desist letter to Plaintiff threatening to sue SAMi if SAMi communicated with Saul Ewing.

54. Driven's actions were unjustified, and were willfully and maliciously taken with the intent to harm Plaintiff.

55. SAMi suffered damages as a result of Driven's tortious conduct, including harm to SAMi's relationship with consultants, and to SAMi's long-standing relationships with Saul Ewing and the State of Maryland.

## COUNT V
## ACCOUNT STATED

56. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 55 above.

57. Pursuant to the MSA, Plaintiff provided system monitoring and preservation services for the legacy Maryland Health Insurance Exchange system, and presented invoices to the Defendants for the work it performed.

58. In 2019, Driven requested, and Plaintiff provided, all outstanding invoices reflecting the amount owed to SAMi for the monitoring and preservation services SAMi had provided.

59. Neither Omnivere, nor Driven, objected to the form or substance of SAMi's unpaid invoices within 30 days of receipt, as required by the MSA (s*ee* Exhibit A at p. 17), or within any other reasonable period of time. Indeed, Driven continued accepting SAMi's services for weeks after receiving the outstanding invoices.

60. Driven impliedly if not explicitly promised to pay Plaintiff for its services as a result of these actions, yet failed to pay the stated amount owed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff SAMi respectfully requests that the Court:

(A) Award SAMi monetary damages in the amount of no less than $261,000, plus interest, for the work SAMi performed for the Defendants from June 2018 through February 2019;

(B) Award SAMi compensatory and punitive damages in an amount to be proven at trial for the harm caused by Defendants' interference with its business relationships, and Defendants' acts of unfair competition;

(C) Award SAMi all costs and reasonable attorneys' fees for this action;

(D) Enter an injunction barring the Defendants from further tortious conduct, and requiring specific performance of the Agreement, as well as enjoining the Defendants from removing, transferring, alienating, pledging, or otherwise impairing any assets in which Plaintiff has a direct or indirect interest, pending a final adjudication of the case; and

(E) Provide all other relief that this Court deems fair and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims and issues so triable.

October 2, 2019                                                    Respectfully submitted,

_____
Rebecca S. LeGrand (D.Md. Bar No. 18351)
Mehreen Imtiaz (D.Md. Bar No. 21026)
LeGrand Law PLLC
1100 H Street NW, Suite 1220
Washington, DC  20005
(202) 587-5725
rebecca@legrandpllc.com

*Counsel for Plaintiff SAMi-Systematic Analysis Management Inc.*